[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Robert and Mary Lou Conley instituted this proceeding to recover for injuries Robert Conley allegedly sustained on December 6, 1992, when a handrail assembly designed to aid users descending into a whirlpool located within the men's health club area of the Regional YMCA of Western Connecticut allegedly gave way. The first two counts are directed at the YMCA and sound in negligence and loss of consortium, respectively. The third and fourth counts are directed against Stanmar, Inc. ("Stanmar"), in its capacity as general contractor and installer of whirlpools, and also sound in negligence and loss of consortium. The fifth and sixth counts are directed at Sinclair Construction ("Sinclair"), in its capacity as subcontractor for Stanmar, and they too sound in negligence and loss of consortium. The remaining counts are directed against Branford Spas/Division of FME ("Branford"), in its capacity as supplier of whirlpool and handrail merchandise to the YMCA, as do the preceding counts, and sound in negligence and loss of consortium.
By way of two special defenses, Stanmar alleges (1) contributory negligence against the plaintiff, Robert Conley; and (2) that the plaintiff's claim is barred by the operation of General Statutes, Sec. 52-584. It has now moved for summary judgment on counts three and four of the amended complaint on the ground that the claims set forth therein are barred by the operation of said Sec. 52-584.
A motion for summary judgment shall be granted "`if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Suarezv. Dickmont Plastics Corp., 229 Conn. 99, 105. "A material fact is simply a fact which will make a difference in the result of the case." Genco v. Connecticut Light Power Co., 7 Conn. App. 164,167. "[T]he burden of proof is on the moving party, the facts presented must be viewed in the light most favorable to the party opposing the motion." State v. Goggin, 208 Conn. 606, 616. "`To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of any material fact.'" CT Page 4206Fogarty v. Rashaw, 193 Conn. 442, 445, quoting Dougherty v.Graham, 161 Conn. 248, 250. "Issue finding, rather than issue determination, is the key to the procedure." Yanow v. TealIndustries, Inc., 178 Conn. 262, 269.
Stanmar maintains that it furnished the handrail mechanism to Sinclair for installation in October or November of 1988. From November of 1988 through December 6, 1990, it did not perform any work with regard to the "construction, maintenance or repair" of the handrail assembly. It argues that since the act of furnishing the handrail mechanism to Sinclair occurred more than three years prior to the commencement of this action, it is barred by the operation of Sec. 52-584.
The plaintiffs respond that Stanmar continued to perform work on the YMCA project until the time of the Robert Conley's fall on December 6, 1990. Therefore, due to the duty Stanmar assumed either "gratuitously or pursuant to contract," its action is not time barred. In support of its motion, Stanmar has attached the affidavit of its Vice President, Arthur Bodwell, who states, in part, that:
 Stanmar had no continuing duty to inspect the handrail assembly, warn of any dangerous condition with respect to the handrail assembly, or to remedy any defect to the handrail assembly following Sinclair's construction and installation of the handrail assembly on or about November 8, 1988.
 With respect to the construction and installation of the handrail assembly, Stanmar's duty ceased upon Sinclair's completion of the project, which occurred on or about November 8, 1988.
 Stanmar never assumed any contractual duty to continually inspect and repair any defects with respect to the construction and installation of the handrail assembly following completion of the project by Sinclair on or about November 8, 1988. There is no term in the standard design/build agreement entered between Stanmar and the YMCA on October 15, 1986 in which Stanmar assumes a duty to continually inspect and repair the handrail assembly at issue.
 Following completion of the installation and construction of the handrail assembly on or about November 8, 1988, Stanmar never performed any work on the handrail assembly nor did it engage in any conduct related to the handrail assembly. CT Page 4207
(Affidavit dated March 15, 1994, pars. 9, 10, 11, 12.)
The plaintiff's allege, inter alia, in their complaint that Stanmar
 [k]new or through reasonable diligence should have known that at the time of installation said handrail assembly was dangerous and defective, in that it was affixed with screws and/or bolts which were not rust resistant and were thereby subject to deterioration; yet, failed to remedy that condition.
 Failed to conduct an investigation to determine the safety, strength and rust resistance during their construction and installation of the handrail assembly of the whirlpool located in the men's health club on said premises.
(Plaintiffs' complaint dated September 4, 1992, count two, pars. 3(a) and (b).)
"Whether a contract exists is a question of fact for the court to determine." Randolph Construction Co. v. Kings EastCorporation, 165 Conn. 269, 277. However, in the present case, an examination of the affidavit and exhibits accompanying Stanmar's motion for summary judgment reveals that the contract relied upon by Bodwell in his affidavit has not been presented before this court. At this juncture, the court cannot determine (1) what duty, if any, Stanmar assumed with regard to the inspection and repair of the handrail at issue that serves as the plaintiff's factual predicate in tolling the statute of limitations; and (2) whether, and to what extent, Stanmar had in its possession job specifications that would resolve questions with regard to the types of bolts to be used and which party had a duty to supply those bolts.
Stanmar's motion for summary judgment is, accordingly, denied.
Moraghan, J.