FIRST STATE BANK OF CANUTE v. THOMAS et ux.

No. 33345.  April 12, 1949.

Rehearing Denied May 3, 1949.

*205 P. 2d 866.*

Ash & Bailey, of Cordell, for plaintiff in error.

Edwards & Edwards of Cordell, for defendants in error.

HALLEY, J. The plaintiff sued upon a promissory note, and the defendants filed separate answers setting up different defenses. Both admitted the execution of the note, but B. G. Thomas alleged that the note sued upon was a renewal note; that prior to its execution he had executed a note to the bank and secured it by chattel mortgage covering certain personal property, consisting of furnishings and fixtures in a cafe owned and operated by him in the town of Canute. He alleged that the value of such personal property exceeded his indebtedness to the bank at the time he executed the renewal note. He further alleged that thereafter, the bank took over and converted to its use the personal property so mortgaged, and that the bank had failed to account to him for such property. He alleges that he signed the note at the bank at Canute, and that thereafter the bank requested him to get the signature of his wife, Arthenia Thomas, on the renewal note, which he refused to do; that her signature was then obtained by threats and coercion, as alleged by her in her separate answer. He prayed for an accounting if held liable on the note.

Arthenia Thomas admits the execution of the note sued upon, but alleges that she signed it against her will and only because the president of the bank told her that if she did not sign, he would sue her husband and foreclose the chattel mortgage on the cafe, and further, that a mortgage would be foreclosed against her father-in-law's farm, and that none of them would have any-thing left. That he refused to let her see the face of the note when she signed it, and that she signed only because of such threats and coercion. She prayed that no judgment be entered against her.

From the foregoing, it will be seen that the defenses of the defendants are entirely different and based upon distinct and separate grounds. The case was tried to a jury, which found for the defendants. The plaintiff bank demurred to the evidence introduced by each of the defendants, and requested an instructed verdict.

Plaintiff alleges various errors, and in its brief complains only of instructions numbered 2 and 3.

Before entering into a discussion of the merits of the contentions of the plaintiff, we think it proper to dispose of the contentions of the defendants with respect to alleged failure of plaintiff to abide by the rules of this court with regard to briefing. It is claimed that Rule 10, Rules of the Supreme Court Effective March 1, 1933, 159 Okla. vii (being Rule 15, Rules of the Supreme Court Adopted November 20, 1936, 177 Okla. vii) is not complied with in the brief of the bank, because such rule requires the brief of the moving party to contain "separately stated and numbered specifications of error". The rule mentioned provides that the contentions of the parties must be set forth "in separate specifications" but does not require that they be separately numbered. That the brief of the plaintiff in error does not contain an abstract of the record. The brief does state the nature of the case filed by the plaintiff, and the separate answers filed by the defendants, but fails to contain a complete abstract of the record. It is further contended that the brief fails to set out completely the instructions of the court excepted to. The brief states the first specification relative to instruction 3, and quotes briefly that portion of instruction 3, wherein the court told the jury that fraud had been

alleged. It does not contain that portion of the instructions covering fraud. The brief does fail to cite the record in a number of instances.

The defendants claim that this appeal should be dismissed on account of the failure of the bank to comply with the rule mentioned. The plaintiff relies entirely upon its exceptions to two instructions given by the court to the jury. All other assignments of error have been abandoned. Instructions 2 and 3 are not set out in full in the brief, but that portion of instruction 2 which is objected to by the plaintiff is set out in full, as provided by the rules of this court. Instruction 3, covering fraud, is not set out in the brief, but is set out in full in the petition in error.

It is necessary to understand the issues as made by the pleadings, and the evidence bearing upon such issues. This is a simple suit upon a promissory note. One defendant answered that he executed the note, but that it had been satisfied from the proceeds of his previously mortgaged personal property, which had been converted and appropriated by the holder of the note, the plaintiff bank. The other defendant, Arthenia Thomas, admitted signing the note sued upon, but alleged that she had signed under threats, intimidation, coercion and force, and that she should not be held liable because she had not signed the note willingly.

We have examined all of the authorities cited by the defendants in error, as supporting their contention that the appeal should be dismissed or the judgment affirmed because of the failure of the plaintiff in error to comply with the rules. In most of these cases we find far more serious reasons for a dismissal of the appeal than appear in this case. The rule concerning briefs was promulgated for the convenience and assistance of this court. The record in the present case is short. The pleadings are neither long nor complicated. While the brief of the plaintiff in error does not comply strictly with the rule

mentioned, we find that such brief does contain sufficient information to enable the court to determine readily the contentions of the plaintiff in error. We conclude that there is a substantial compliance with the rules, and that the appeal should not be dismissed.

A careful adherence to the rules of this court by all attorneys appealing cases will be of great assistance to the court in reviewing the cases that come before it.

We shall now consider the two instructions complained of by the plaintiff in the order in which they are presented in its brief. Instruction 3 is as follows:

"The defendants, in their answers, have alleged fraud on the part of the agents of the plaintiff bank. In this connection you are advised that fraud is never presumed, but the burden of proving fraud rests upon the defendants in this case, and to sustain this burden the evidence of fraud must be clear, cogent, and decisive."

Plaintiff in error contends that the issue of fraud is not found in the pleadings nor in the evidence, and invokes the well-established rule that, in general, it is error to instruct the jury upon a material issue not raised by the pleadings, citing Dill et al. v. Johnson et al., 121 Okla. 64, 247 P. 349, and other Oklahoma authorities. This contention requires an examination of the pleadings. The defendants filed separate answers. Arthenia Thomas alleged that after the note was signed by her husband the representative of the bank came to their home and told her he wanted her to sign the note sued upon herein; that her husband was present and told her she owed the bank nothing and for her not to sign; that the bank representative then told her that if she did not sign, he would sue her husband and foreclose the mortgage held by the bank securing an original note and covering the cafe property of her husband; that he held a mortgage on her father-in-law's farm, for whom

he was getting a new loan, and that her refusal to sign the note would ruin her, her husband, and her father-in-law, because he would foreclose both the chattel mortgage on her husband's cafe and the mortgage on her father-in-law's farm, and none of them would have anything left. That the bank representative continued to repeat his threats and used every device and subterfuge he could, " . . . and at last overcome by his threats she did sign the note to her hurt and damage." That he refused to permit her to read the note, but told her it was for $500, and that she was in such a state of mental agitation that she did not know what she was doing; "that her signature was procured by intimidation, threats and force and that was not of her free act and will but against her will."

The pertinent portion of the answer of the defendant B. G. Thomas is as follows:

"The defendant further alleges that he signed the note at the bank at Canute and that he was not required to get the signature of the codefendant who is his wife prior to signing the note, but that after he signed the note the said Hugo Lamb took the note to the home of the defendant and demanded that the wife sign it; that this defendant refused to permit the codefendant to sign the note but that the said Hugo Lamb by the use of threats and coercion as set out in the answer of said codefendant succeeded in getting her to sign it."

It will be noted that the term "fraud" is not mentioned in the pleading of either defendant. B. G. Thomas made no contention that he should be relieved of his liability upon the ground of fraud, duress, undue influence, threats or force. He claimed that he was not liable on the note because the bank had taken over and converted to its own use the personal property covered by his mortgage to the bank to secure a previous note, and that since the property so converted was equal to or exceeded the amount due by him, he should not be held liable on the renewal note.

We are unable to agree that the court's instruction 3 should have been made applicable to both defendants, since the defendant B. G. Thomas does not adopt the pleading of his codefendant, but merely refers to it as being a plea by her that her signature to the note was secured by threats and coercion as set out in her answer, and makes no effort to claim her defense as his own.

Instruction 3 makes no effort to define fraud, duress, undue influence, intimidation or coercion. Those terms are well defined in O.S.A., Title 15, ch. 1. It was held in F. B. Collins Inv. Co. v. Easley, 44 Okla. 429, 144 P. 1072, that a threat to institute foreclosure of a mortgage, unless the mortgage is executed to take up previous liens, does not invalidate the instrument executed under such threats. It is not unlawful for one to threaten to do what he has a legal right to do. The threats of the bank to foreclose the chattel mortgage held by it against the property of the defendant B. G. Thomas would not relieve his codefendant of liability assumed to prevent such foreclosure. That leaves the question of her liability on the note signed because of threats to foreclose a mortgage upon the land of her father-in-law. Instruction 3, if justified as to the defendant Arthenia Thomas, was erroneous in that it failed to limit the defense of fraud to her alone.

We consider it immaterial whether the acts alleged to be wrongful be termed fraud, duress, undue influence, threats or coercion, or force. The term "fraud" is difficult to define. It generally contains an element of falsity and deceit, while duress or undue influence overcomes the will and destroys free agency.

This court has adopted what is sometimes termed "the modern view" of fraud, and has held in many instances that fraud is a "generic" term and embraces all unfair ways by which another is cheated or unlawfully imposed upon.

Under these decisions, the term "fraud" may include certain elements of duress, undue influence, threats and intimidation. Bigpond v. Mutaloke et al., 187 Okla. 611, 105 P. 2d 408; Johnson v. McDonald et al., 170 Okla. 117, 39 P. 2d 150.

If the facts alleged by the defendant Arthenia Thomas were in some respects false, as alleged by her, and the threats made by the plaintiff were sufficient to coerce her into signing the note against her will, we do not deem the defense pleaded as entirely lacking in the necessary allegations of fraud, and where the facts pleaded constitute fraud, it is not necessary that the term "fraud" appear in the pleadings to justify the court in instructing the jury upon fraud; but such instructions should limit the instruction on fraud to the party alleging it, and claiming it as a defense.

The portion of instruction 2 complained of is as follows:

"And if you find from a preponderance of the evidence that the defendant, Arthenia Thomas, signed the note as surety without consideration for the accommodation only of B. G. Thomas, solely by reason of the threats of the plaintiff to immediately foreclose on her husband's cafe fixtures and the further threat of preventing her father-in-law from completing a loan he was negotiating, and you further find she would not have signed said note without such threats, then your verdict should be for the defendant, Arthenia Thomas."

While this instruction is limited to the defendant Arthenia Thomas, it is erroneous in that it instructs the jury that it might find for her if she signed the note involved because the bank had threatened to foreclose on the cafe fixtures owned by her husband. This the bank had a legal right to do, and under the decision of this court in F. B. Collins Inv. Co. v. Easley, supra, the defendant would not be relieved of liability upon a note signed because of such threats. If the bank representative deceived her as to the correct amount of the note, or what he or the bank would do or intended to do, and thereby secured her signature against her will, then the jury should have been instructed that if it so found, it should find for her. But the instruction should not advise the jury that it might find for her if she signed the note on account of threats by the bank to do what it had a legal right to do.

The evidence is not at all clear as to the correct status of any mortgage held by the bank, or its representative, or some insurance company, on the land of the father-in-law of the defendant Arthenia Thomas. There is some testimony that such a mortgage existed at the time the note was signed by her, but the president of the bank denies that he or the bank ever held such mortgage or that he had anything to do with any renewal or extension thereof. While the question of the sufficiency of the evidence to prove that the plaintiff bank converted the property of the defendant B. G. Thomas to its own use is not raised on appeal, a careful reading of the record shows no substantial evidence that the bank ever received any sum whatever from such personal property as was covered by its chattel mortgage. It is shown that the beer dispenser had been placed in a small building on a lot owned by the bank, but it is not shown that it was placed there by the bank or with its knowledge or consent. The president of the bank testified that he had had opportunities to sell the property covered by the chattel mortgage, but he never took possession of any of such property or sold it, but always referred prospective purchasers to the defendant B. G. Thomas. The finding of the jury for the defendants indicates that the jury must have been influenced by the erroneous instructions complained of by the plaintiff. The defendant B. G. Thomas did testify that the president of the bank told him it had taken over his personal property mentioned, but did not testify that he knew of any

330

such action on the part of the bank, and produced no evidence to show that the bank had obtained any sum whatever from such alleged conversion.

We conclude that this action should be reversed and remanded on account of the erroneous instructions to the jury, and that the plaintiff should be granted a new trial.

Reversed and remanded.

DAVISON, C.J., ARNOLD, V.C.J., and WELCH, CORN, GIBSON, and LUTTRELL, JJ., concur. O'NEAL, J., dissents.