266 F.2d 143
 NOLAN BROS., INC., a corporation, and The Travelers Indemnity Company, a corporation, Appellants,
v.
UNITED STATES of America for the use of FOX BROTHERS CONSTRUCTION COMPANY, a co-partnership composed of Fred F. Fox and W. L. Fox; and Burch and Canada Construction Company, a co-partnership composed of T. O. Burch and Ham Canada, doing business as a joint venture under the name of Altus Construction Co., Appellees.
 No. 6004.
 United States Court of Appeals Tenth Circuit.
 March 18, 1959.
 
 Richard W. Fowler, Oklahoma City, Okl. (Joseph G. Rucks and Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Oklahoma City, Okl., were with him on the brief), for appellants.
 Coleman Hayes, Oklahoma City, Okl. (Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, Okl., was with him on the brief), for appellees.
 Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.
 BRATTON, Chief Judge.
 
 
 1
 Brought within the framework of the Miller Act, 40 U.S.C.A. § 270a et seq., the United States instituted this action for the use and benefit of Fred F. Fox, W. L. Fox, T. O. Burch, and Ham Canada, doing business as a joint venture under the name of Altus Construction Co., hereinafter referred to as Altus, against Nolan Bros., Inc., a corporation organized under the laws of Minnesota, hereinafter referred to as Nolan, and The Travelers Indemnity Company, a corporation organized under the laws of Connecticut, hereinafter referred to as the Indemnity Company. The substance of the cause of action pleaded in the complaint was that the United States entered into a prime contract with Nolan for certain construction work at Clinton Air Force Base in Oklahoma; that Nolan as principal and the Indemnity Company as surety executed and delivered to the United States their bond conditioned as required by the Act, supra; that Nolan let to Altus a subcontract covering certain dirt work on the project; that Altus performed services in moving dirt; and that there was an unpaid balance due therefor. Except for an item of $29,146.94 withheld under the terms of the subcontract, Nolan pleaded payment in full of the amount due for the work done by Altus. And by counterclaim, Nolan sought to recover $29,146.94 for engineering services allegedly furnished for the benefit of Altus. The cause was tried to a jury; the jury returned a verdict for Altus; judgment was entered upon the verdict; and Nolan and the Indemnity Company appealed.
 
 
 2
 Asserted error is predicated upon the action of the court in submitting to the jury the issue of fraud on the part of Nolan. The substance of the argument is that fraud had not been raised in the pleadings and was not an issue in the case. It was alleged in the complaint that the United States issued plans and specifications covering the proposed construction at the Clinton Air Force Base; that Nolan furnished Altus a set of such plans and specifications for its use in determining whether it would submit to Nolan a bid to perform a portion of the work in the event Nolan should be the successful bidder as prime contractor; and that Altus discussed with Nolan the quantities of excavation, filling, and other like work which would be required under the plans and specifications furnished to it. It was further alleged that before the prime contract was awarded to Nolan, a new set of plans was issued in lieu of the old; that in such new plans changes were made in the grading area and otherwise which had the effect of almost doubling the volume of dirt work to be done; that Nolan knew of such changes in the plans at the time it submitted its bid for the prime contract and at the time of the execution of the subcontract; and that Nolan did not advise Altus of such changes. It was further alleged that the subcontract provided for compensation for the work to be done on a specified lump sum basis, not a unit basis; that at the time of entering into such subcontract, Altus did not know of the changes in the plans increasing the dirt work required; that it first became aware of such changes after it had executed the subcontract and had begun work on the project; that promptly after receipt of such information, Altus protested to Nolan that the subcontract contemplated the handling of only approximately 649,000 cubic yards of earth within the grading area affected thereby, while the new plans would necessitate the handling of more than 1,000,000 cubic yards; that Nolan urged Altus to continue the work commenced by it and complete the same in accordance with the new plans; that Nolan assured Altus that it would be fairly compensated for doing so; that reserving its rights against Nolan, including that of compensation for the reasonable value of all work performed by it which was not contemplated by the parties at the time of entering into the subcontract, Altus did all of the work necessary to comply with the prime contract of the nature specified in the subcontract; that such work was accepted by both Nolan and the United States; and that the balance due for the reasonable value of such work was $227,186.60. Rule of Civil Procedure 9(b), 28 U.S.C., provides in presently pertinent part that in all averments of fraud, the circumstances constituting fraud shall be stated with particularity. The word fraud or the word fraudulent did not appear in the complaint. But unless there is an applicable statute or rule expressly or by fair implication providing otherwise, the use of either word is not indispensably necessary to the pleading of a cause of action or a defense entitling the pleader to relief upon the ground of fraud. First State Bank of Canute v. Thomas, 201 Okl. 325, 205 P.2d 866. And Rule 9(b), supra, does not require a general express allegation of fraud in which the word fraud is used categorically. Instead, it merely requires that the circumstances constituting fraud shall be pleaded with particularity. Daniel v. Board of Trade of City of Chicago, 7 Cir., 164 F.2d 815. Considered as a whole, the facts and circumstances pleaded in the complaint met in full measure the exaction of the rule in respect to averring fraud. Evidence was adduced which tended to sustain such allegations. And therefore the issue was one for the jury under appropriate instructions of the court.
 
 
 3
 Further asserted error is predicated upon the action of the court in submitting to the jury the issue of mistake. It is urged that the complaint contained no averment of mutual mistake; that there was no claim that Nolan labored under any misapprehension of fact; that there was no claim that Nolan even knew that Altus was unaware of the revision in the plans at the time of the execution of the subcontract; and that therefore the issue of mistake should not have been submitted to the jury. Rule of Civil Procedure 9(b), supra, also provides that in all averments of mistake, the circumstances constituting the mistake shall be stated with particularity. The complaint did not allege facts constituting mutual mistake. Neither did it allege any misapprehension of fact on the part of Nolan. But it did allege with particularity facts and circumstances constituting a unilateral mistake of fact on the part of Altus of impelling importance relating to the very essence of the subcontract; alleged facts disclosing that such unilateral mistake did not arise out of gross negligence on the part of Altus; alleged that Nolan knew of such unilateral mistake at the time of the signing of the subcontract; and alleged in substance that the completion of the dirt work according to the revised plans for the lump sum specified in the subcontract would result in Nolan reaping an unconscionable gain. And under the law of Oklahoma, as we understand it, if the contract was executed under those circumstances it was wanting in mutuality. Lovell v. City of Altus, 118 Okl. 106, 246 P. 468. Evidence was adduced which tended to sustain the allegations relating to the unilateral mistake. And we are clear in the view that under the allegations contained in the complaint and the evidence at the trial the court properly instructed the jury that if such unilateral mistake entered into the execution of the subcontract, Altus was entitled to recover the reasonable value of the services rendered.
 
 
 4
 The final contention urged for reversal of the judgment is that the alleged oral agreement was inconsistent with the written contract; that it has never been performed by Nolan; that it remains executory; and that therefore the court erred in submitting to the jury the question whether it was an executed oral contract sufficient to modify the written contract. It is the general rule in Oklahoma that, absent fraud, accident, or mistake, a subsequent parol agreement between parties inconsistent with the terms of a written contract previously entered into by them pertaining to the same subject matter is not enforceable unless fully performed. Davis v. Standard Insurance Co., Okl., 280 P.2d 462; C. Robert Ingram, Inc. v. Chrysler Corp., 10 Cir., 256 F.2d 684. And that well recognized general rule has appropriate application in a case where parties enter into a parol agreement intended to effect a modification of some provision in their written contract previously entered into concerning which there is no controversy between them.
 
 
 5
 The parol agreement upon which Altus relied as the basis for the recovery of the reasonable value of the work done on the project was not intended merely to effect a modification of a provision in the written contract about which there was then no present controversy. A bona fide controversy existed between the parties. It arose out of the unilateral mistake which attended the execution of the written contract and it went to the very heart of the written contract. It was so vital that Altus was threatening to discontinue or terminate permanently work on the project. According to the allegations contained in the complaint, and according to the evidence which the jury manifestly credited, Nolan urged Altus to continue the work and complete it according to the revised plans and agreed verbally to pay Altus for all of the work done. Altus agreed to forbear discontinuing or terminating permanently the work. It continued and completed the work according to the revised plans even though it involved moving much more dirt than was contemplated by the original plans. And Nolan accepted the benefits of the work done by Altus. If the oral agreement was entered into under those circumstances and was fully performed by Altus with Nolan receiving the benefits of such performance, Nolan was liable for the reasonable value of the work done. Pittsburgh Testing Laboratory v. Farnsworth & Chambers Co., 10 Cir., 251 F.2d 77. And therefore the court providently submitted the question to the jury.
 
 The judgment is
 
 6
 Affirmed.